UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

UNITED STATES OF AMERICA,

                                                   DECISION & ORDER and
                                                   REPORT & RECOMMENDATION

                          Plaintiff,

                                                   20-CR-6169CJS

          v.

CRYMSON ALDRICH,

                          Defendants.
_____


**PRELIMINARY STATEMENT**

       By Order of Hon. Charles J. Siragusa, United States District Judge, dated December 8, 2020, all pretrial matters in the above-captioned case have been referred to this Court pursuant to 28 U.S.C. §§ 636(b)(1)(A)-(B).  (Docket # 235).

       On December 8, 2020, the grand jury returned a fifteen-count indictment against defendant Crymson Aldrich.  (Docket # 233).  Count One charges Aldrich with conspiracy to commit wire fraud from approximately November 2016 through August 2019, in violation of 18 U.S.C. § 1349.  (*Id.*).  Counts Two through Fifteen charge Aldrich with fourteen counts of wire fraud, in violation of 18 U.S.C. §§ 1343 and 2.  (*Id.*).

       Aldrich is representing herself in this prosecution and has filed numerous pretrial motions.  Those motions include several motions for discovery and inspection (Docket ## 220, 221, 239) and various motions to dismiss the indictment based upon, among other grounds, allegations of lack of jurisdiction, improper venue, invalid charging statutes, and unlawful

investigation (Docket ## 239, 244, 245, 246).[1]  The government opposes the motions.[2]  (Docket # 247).

---

[1] Throughout this prosecution, Aldrich has filed numerous submissions raising a variety of issues, principally jurisdictional challenges.  (*See*, *e.g.*, Docket ## 143, 162, 179, 180, 181, 183, 185, 186, 187, 188, 195, 196, 198, 224, 225, 226, 227, 228, 229, 230, 231, 239, 244, 245, 246, 249).  In light of her *pro se* status, the Court has liberally construed her filings.

In several of her filings, Aldrich argues that this Court is biased against her – a contention based upon comments the undersigned made during an appearance on July 9, 2020.  (Docket ## 223; 228; 230 at ¶ 12).  Aldrich states that I raised my voice and threatened her during that proceeding.  (Docket # 230 at ¶ 12).  In support, she cites my comment on the record, "I am not somebody who typically raises my voice, but I want you to hear loudly and [that I expect you to participate in your competency evaluation]."  (*Id.*).

The recording of the proceedings demonstrates the context within which this exchange occurred.  Pending before the Court at the time was a competency motion filed by Aldrich's counsel, who no longer represents her in connection with this matter.  (Docket ## 126, 194).  On March 19, 2020, this Court ordered that Aldrich be examined by Rajendra P. Singh ("Singh"), MD, in order to determine whether Aldrich was competent to stand trial.  (Docket # 139).  During the proceedings held the same day, I advised Aldrich that an out-of-custody evaluation was dependent upon her participation in that process.  I further advised Aldrich that I would not address her request to proceed *pro se* until after I had determined whether she was competent.

On July 7, 2020, I received a report from Singh that stated that he had met with Aldrich to conduct an evaluation on June 24, 2020, but that she had not participated in the evaluation; rather, she remained mute throughout the interview.  (Docket # 176).  As a result, Singh indicated that he was unable to provide the Court "a diagnosis [or] formulate an assessment with a reasonable degree of medical certainty."  (*Id.* at 7).  During the subsequent July 9, 2020 court proceeding, Aldrich stated that because she had filed a grievance against her retained counsel, she had not felt comfortable participating in the evaluation with Singh prior to the Court rendering a determination on her request to proceed *pro se*.  I again explained to Aldrich that I was not able to address her request to proceed *pro se* without first addressing her competency, but that I was willing to appoint her another attorney to represent her while the issue of competency was pending.  I further explained that I needed to obtain a psychiatric evaluation in order to be able to render a determination on the motion for competency.  I indicated that my preference was for Aldrich to complete the evaluation in an outpatient setting, particularly considering that she had been released pending trial and that we were in the midst of the COVID-19 pandemic.  I explained that in the event that she refused to participate in the outpatient evaluation process, I would have no alternative but to take her into custody so that an inpatient evaluation could be conducted.  Specifically, I advised her as follows:

> I have tried to be patient and reasonable with you.  I understand you've made a lot of filings.  And I just, I want you to hear – and I'm not somebody who typically raises my voice – but I want you to hear loudly and clearly that I expect you to meet with Dr. Singh if he is willing to meet with you again and to participate in that evaluation.  Again, I'm not, this is not a threat to take you into custody, it is simply [to state] that if we can't get it done here, I will have no alternative.  I don't want to do that but if we get to the point where I cannot get an evaluation done while you remain out of custody, I will have no alternative.  Okay, so it's really important that you understand the stakes.  I will deal with your application to proceed *pro se*, but I have to deal with the competence question first.

Thus, contrary to Aldrich's characterization, the statement she cites was meant to convey to her the importance of her participation in the evaluation.  I sought to communicate to Aldrich that even though I was not raising my voice, she needed to hear the message clearly that her participation in the outpatient evaluation was essential to remaining

For the reasons discussed below, I grant in part and deny in part Aldrich's discovery motions, and I recommend that the district court deny her motions to dismiss.

## DECISION & ORDER

Aldrich, who is representing herself, has filed several motions alleging that the government has not complied with its discovery obligations; specifically, she complains that the government has not produced statements made by alleged co-conspirators. (*See, e.g.*, Docket ## 220, 221, 232, 239). During oral argument on May 5, 2021, the Assistant United States Attorney prosecuting this case (the "AUSA") represented that she had an "open file [discovery] policy" and had already produced all the documents which Aldrich was entitled to obtain at this time. Additionally, the AUSA represented that she had made available for Aldrich's review recordings, and transcripts of recordings, of conversations between Aldrich and a cooperating witness. The AUSA also represented that she had not yet produced *Jencks* material and agreed to do so two weeks prior to trial.

During oral argument, Aldrich requested that the government provide her with copies of the transcripts of the recordings in order to facilitate her defense preparation. The government opposed this request, maintaining that their production risks compromising the safety of the cooperating witness, who would be identifiable from the transcript even if his or her

---

out of custody. I explicitly advised her that I was not threatening her. Further, as demonstrated by the recording, neither the volume nor the tone of my voice changed during the exchange.

In any event, to the extent Aldrich's filings may be interpreted as including a request for disqualification or recusal on the grounds that I have demonstrated bias against Aldrich, that request is denied as unsupported. *See United States v. English*, 629 F.3d 311, 321 (2d Cir. 2011) ("[i]n considering a claim of judicial bias, we review the court's comments and rulings in the context of the record as a whole, . . . and even 'expressions of impatience, dissatisfaction, annoyance, and even anger' would not establish bias or partiality") (quoting *Liteky v. United States*, 510 U.S. 540, 555-56 (1994)).

[2] Aldrich also maintains that the government's opposition to her motions is frivolous and fails to adequately address her arguments. (Docket # 249). Given the prolixity of her filings and the incomprehensibility of many of her arguments, I find that the government's response is adequate.

name were redacted. The government confirmed its willingness to make arrangements with Aldrich to permit her to review them again.

Based upon the government's representations that all other required disclosures have been made and that the transcripts and recordings remain available for Aldrich's review upon request, as well as the government's concern regarding the safety of the cooperating witness, I decline to order production of the transcripts at this time. In order to ensure that Aldrich is able to prepare adequately for trial, especially considering her *pro se* status, I order that the recordings and transcripts be produced to her by no later than six weeks before the date set for trial. Accordingly, Aldrich's motions for discovery (Docket ## 220, 221, 239) are granted in part and denied in part.

## REPORT & RECOMMENDATION

Aldrich has filed over twenty-five separate submissions raising various challenges; many of the submissions are duplicative of others, often confusing or simply incomprehensible, and some are quite lengthy.[3] (*See* Docket ## 143, 162, 179, 180, 181, 183, 185, 186, 187, 188, 190, 193, 195, 196, 197, 198, 199, 208, 224, 225, 226, 227, 228, 229, 230, 231, 239, 244, 245, 246, 249).[4] Mindful of Aldrich's *pro se* status, I have read the submissions carefully and interpret them to seek dismissal of the indictment on several grounds, principally,

---

[3] As stated *supra*, on February 28, 2020, Aldrich's retained counsel filed a motion requesting that a psychological evaluation be conducted to determine Aldrich's competency to proceed to trial. (Docket # 126). This Court granted the motion on March 3, 2020. (Docket # 128). The forensic psychiatrist who conducted the evaluation concluded that Aldrich was currently not competent, but suggested that her lack of competence might have resulted from prescribed medication for a medical condition and could be addressed with adjustments to the medication. (Docket # 200). An adjournment was granted to explore that possibility. (Docket # 202). A subsequent evaluation was conducted by a different psychologist; that expert concluded that Aldrich was then competent to proceed. (Docket # 213). Neither side objected to the finding or requested a hearing (Docket # 214), and the Court determined that Aldrich was competent to proceed. (Docket ## 216, 219).

[4] Aldrich filed three submissions on April 5, 2021. (Docket ## 244, 245, 246). Docket ## 245 and 246, if combined, appear identical to Docket # 244.

4

lack of jurisdiction, improper venue, invalidity of the charging statutes, and unlawfulness of the investigation. I address each of these arguments below.

I.      **The Indictment**

The indictment charges Aldrich with conspiring with others to defraud the United States through the manufacture and sale of unlicensed and untaxed cigarettes on the Akwesasne Mohawk Indian Reservation (the "Reservation"), on other Indian reservations, and in other locations in New York State and the United States, and to transmit and cause to be transmitted wire communications in order to execute the scheme to defraud. (Docket # 233 at 3-4, ¶ 3). The indictment specifically alleges that the conspirators purchased large quantities of cut rag tobacco and arranged for its transportation to a warehouse located on the Akwesasne Reservation. (*Id.* at 3-4, ¶ 3; 4-5, ¶¶ 4-6). Two of the alleged co-conspirators, Jonathan and Joseph Thompson (the "Thompson Brothers"), used the tobacco to manufacture cigarettes, which they then distributed and sold to customers on and off the Reservation, while evading payment of federal excise taxes. (*Id.* at 3-4, ¶ 3; 5, ¶ 6).

With respect to Aldrich's role in the conspiracy, the indictment alleges that she arranged for the purchase of the tobacco through text messages, telephone calls, and meetings with Bernard Perkins, the owner of Bristol International Group, LLC ("Bristol International"). (*Id.* at 4, ¶ 4). As alleged in the indictment, Aldrich ordered tobacco from Perkins and paid him with cash that she had received from the Thompson Brothers. (*Id.* at 4-5, ¶¶ 4-5). Perkins deposited the cash into bank accounts located in Rochester, New York, maintained by his business Bristol International, and thereafter wired the funds from those accounts into an account owned by CanStar International, Inc. ("CanStar"), a tobacco brokerage company located in

Miami, Florida. (*Id.*). CanStar then arranged for the purchase of the tobacco from Tobacco Rag Processors, Inc. ("TRP"), a tobacco processing company located in North Carolina, and immediately resold it to Bristol International. (*Id.*). Perkins also arranged for the tobacco to be trucked from TRP to a warehouse maintained and controlled by the Thompson Brothers. (*Id.* at 5, ¶ 6). According to the indictment, Aldrich often met the truck drivers upon their arrival in the area and directed them to the delivery location. (*Id.*). The indictment further alleges that the Thompson Brothers paid Aldrich a fee for each order of tobacco that she obtained for them. (*Id.* at 5, ¶ 7).

    The conspiracy count identifies fourteen wire transactions between November 2016 and August 2019 allegedly made in furtherance of the conspiracy. (*Id.* at 6-7, ¶¶ 8-10). The transactions, totaling slightly more than $1 million, were wire transfers from Perkins's Rochester bank accounts (of funds that he had received from Aldrich and deposited into his business accounts) into CanStar's Miami, Florida bank account. (*Id.*). Those funds were used to purchase the tobacco delivered to the Thompson Brothers that they used to manufacture untaxed cigarettes and evade nearly $7 million in federal excise taxes. (*Id.*). Counts Two through Fifteen constitute substantive wire fraud counts for each of the fourteen transactions identified in Count One. (*Id.* at 8-9, ¶¶ 1-3).

## II.  <u>Jurisdiction</u>

    As Aldrich clarified during oral argument, her principal argument in favor of dismissal is that she should be treated as a sovereign nation or a sovereign nation "Diplomat" or member and enjoy immunity from prosecution for violation of criminal statutes of the United

States.[5]  (*See*, *e.g.*, Docket ## 225 at 4 ("I will continue to stand in my privilege with sovereign immunity, I am my own nation . . . and the laws of the United States Constitution do not apply to me as an individual of sovereign immunity"); 226; 227 at 2 ("I am of a new generation and I do not agree to any treaty, I want my own, I can only affirm that a treaty validates my International Sovereign status, As a sovereign International Diplomat, I am fully capable of handling my own affairs"); 230 at 3 ("I am a sovereign independent nation, I am not a citizen of the United States of America"); 231; 246 at ¶¶ 12-21, 46-49).  This argument lacks merit.

Although "Indian tribes [are] 'distinct, independent political communities' exercising sovereign authority[,] . . . [d]ue to their incorporation into the United States[,] . . . the 'sovereignty that the Indian tribes retain is of a unique and limited character.'" *United States v. Cooley*, ___ S. Ct. ___, 2021 WL 2194835, *3 (2021) (quoting *Worcester v. Georgia*, 6 Pet. 515, 559 (1832) and *United States v. Wheeler*, 435 U.S. 313, 323 (1978)).  A United States district court has original jurisdiction over "all offenses against the laws of the United States," which "apply to all persons within its borders." *United States v. Toader*, 409 F. App'x 9, 13 (7th Cir. 2010) (citing 18 U.S.C. § 3231 and *United States v. James*, 328 F.3d 953 (7th Cir. 2003)).  Thus, even if her assertion that she is a member of a sovereign nation is credited, that fact "would not relieve [Aldrich] of criminal liability for violations of federal law committed within the [c]ourt's jurisdiction." *United States v. Reed*, 2010 WL 99128 at *4 (denying motion to dismiss based on

---

[5] The basis on which Aldrich claims entitlement to sovereign immunity varies throughout her submissions. At times, she appears to claim sovereign immunity based upon her Mohawk Nation lineage, although she has submitted documents suggesting that she has voluntarily separated from her tribe. (Docket ## 165; 208 at ¶ 6).  She has also submitted documents suggesting that she is a member of the Mohawk Nation of the Akwesasne Territory. (Docket # 187).  She has also alleged that her name is Karakwahawi and that she is a member of the Bear Clan and of Haudenosaunee descendancy. (Docket ## 208 at ¶ 1; 245 at ¶ 1)  To the extent Aldrich claims that she is entitled to sovereign immunity based upon her membership in an Indian tribe or her tribal descendancy, the merits of that argument are addressed above.  To the extent Aldrich maintains that she is entitled to immunity because she is a "Diplomat," "an individual must be accredited by the State Department as a diplomatic official in order to be entitled to full diplomatic immunity," *United States v. Reed*, 2010 WL 99128, *4 (D.N.D 2010), and Aldrich has submitted no proof of accreditation.  Finally, Aldrich has not submitted any facts or legal authority to support her suggestion that she should be treated as an independent nation entitled to sovereign immunity.

sovereign immunity brought by defendant who alleged that he was a member of the Little Shell Indian tribe); *see also United States v. Williams*, 549 F. App'x 813, 823 & n.8 (10th Cir. 2013) (tribal sovereign immunity did not insulate defendant from being "charged with and convicted of a crime in violation of a generally applicable federal statute"); *United States v. Toader*, 409 F. App'x at 13 (rejecting argument that federal criminal laws do not apply to a Moorish national); *cf. New York v. Golden Feather Smoke Shop, Inc.*, 2009 WL 705815, *7 (S.D.N.Y. 2009) ("[i]t is well-settled that tribal sovereign immunity does not extend to individual members of a tribe") (quotations omitted).

    The federal crimes with which Aldrich is charged are alleged to have occurred, at least in part, outside the Reservation and are alleged to have been perpetrated in order to defraud the United States from substantial federal excise tax revenue, providing this Court with subject matter jurisdiction. *See United States v. White*, 237 F.3d 170, 172, 174 n.4 (2d Cir. 2001) ("[w]ith certain exceptions . . . , federal laws of general applicability are presumed to apply to American Indians, regardless of whether they reside on or off a reservation"; "[d]efendants . . . were not prosecuted for *any* Indian-on-Indian offense[;] [t]he only possible victim . . . [was] the United States itself[,] . . . [and] these statutes were applicable to defendants' conduct on the ground that they protect independent federal interests, namely, the federal government's interest in discouraging money laundering and collecting tax revenues"); *United States v. Markiewicz*, 978 F.2d 786, 800, 801 (2d Cir. 1992) (district court properly exercised jurisdiction where crime occurred in part outside Indian territory; "federal jurisdiction extends 'to crimes over which there is federal jurisdiction regardless of whether an Indian is involved,' . . . where such offenses constitute 'peculiarly Federal' crimes, and the prosecution of such offenses would protect an independent federal interest") (quoting *United States v. Wheeler*, 435 U.S. at 330 n.30), *cert.*

*denied*, 506 U.S. 1086 (1993); *United States v. Miller*, 26 F. Supp. 2d 415, 428 (N.D.N.Y. 1998) ("the issue of federal criminal jurisdiction arises only when the offense occurred within Indian country[;] . . . even to the extent that Reservation sovereignty is properly before us, it must give way to federal interests in preventing money laundering involving a scheme to defraud the United States"); *see also United States v. Banks*, 372 F. App'x 237, 241 (3d Cir. 2010) (rejecting argument that court lacked jurisdiction over wire fraud charges against Indian defendant; "[b]ecause [defendant] was thus clearly charged with 'offenses against the laws of the United States,' there can be no question that the district court had jurisdiction over [defendant's] case"); *United States v. Boots*, 80 F.3d 580, 593 (1st Cir.) (federal government has authority to prosecute Native Americans for violations of wire fraud statutes; "[t]he statutory violations charged under 18 U.S.C. §§ 1343 and 1346 are not specific to Native Americans, but rather are of general applicability"), *cert. denied*, 519 U.S. 905 (1996), *abrogated on other grounds by*, 544 U.S. 349 (2005); *United States v. Kendrick*, 2015 WL 500805, *7 (W.D.N.Y. 2015) ("[a] criminal statute alleges a general federal crime when it involves federal laws of general applicability that make certain actions criminal regardless of where they are committed") (internal quotations omitted), *aff'd*, 826 F. App'x 60 (2d Cir. 2020) (summary order). Thus, contrary to Aldrich's contention (Docket # 246 at ¶ 45), the fact that wire fraud is not an enumerated offense in the Indian Major Crimes Act, 18 U.S.C. § 1153, is irrelevant because the crimes with which she is charged in the indictment involve financial transactions occurring off reservation land and involve a scheme to defraud the United States of tax revenue. *See United States v. Markiewicz*, 978 F.2d at 799; *United States v. Miller*, 26 F. Supp. 2d at 428 (rejecting contention that no federal jurisdiction existed over money-laundering conspiracy because it was "neither an enumerated crime under the [Federal Enclave Act, 18 U.S.C. § 1152] nor the [Major Crimes Act, 18 U.S.C. § 1153]"

where the financial transactions occurred at banks located in the State of New York and where "strong federal interest[s]" were implicated in "preventing money laundering involving a scheme to defraud the United States").

The statutes, treaties, and other authorities cited by Aldrich do not undermine or refute the Court's assertion of jurisdiction. (*See, e.g.*, Docket ## 225 (citing 25 U.S.C. § 177); 229 at 2 (citing 25 U.S.C. § 177); 230 at ¶ 6 (citing the Jay Treaty); 239 (citing 25 USC §§ 232 & 233 and *New York ex rel. Cutler v. Dibble*, 62 U.S. 366 (1858)); 245 at ¶ 18 (citing 18 U.S.C. §§ 241, 242 and 1091), ¶ 42 (citing 25 U.S.C. §§ 232 and 233), ¶ 45 (citing 25 U.S.C. §§ 1301-1304), ¶ 48 (citing 18 U.S.C. § 4), ¶ 50 (citing 26 U.S.C. § 501); 246 at ¶¶ 3-6, 8-10, 18 (citing various rules and statutes applicable to civil proceedings), ¶ 11 (citing 25 U.S.C. § 232), ¶¶ 28-29 (citing 26 U.S.C. § 7804 and 31 U.S.C. § 3711)). Similarly unavailing is Aldrich's contention that this Court lacks jurisdiction because it is not an Article III court (Docket # 246 at ¶¶ 30-37). *See Jacobs v. Pataki*, 68 F. App'x 222, 224 (2d Cir. 2003) (summary order) (rejecting argument that the Western District of New York was not an Article III Court) (citing U.S. Const. art. III, § 1 ("[t]he judicial Power of the United States, shall be vested in one supreme Court, and in such inferior Courts as the Congress may from time to time establish") and Act of May 12, 1900, 31 Stat. 175, 175-77 (establishing the Western District of New York)).

## III.  Venue

Aldrich maintains that venue for this prosecution does not properly lie in the Western District of New York; rather, she contends that the matter must be heard by Congress. (Docket # 228). The Constitution requires criminal trials to be conducted in the district where the crime occurred. *See* U.S. Const. amend. VI ("[i]n all criminal prosecutions, the accused shall

enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed"); Fed. R. Crim. P. 18 ("the government must prosecute an offense in a district where the offense was committed"); *see also* U.S. Const. art. III, § 2, cl. 3 ("[t]he Trial of all crimes . . . shall be held in the State where the said Crimes shall have been committed"); *United States v. Bala*, 236 F.3d 87, 95 (2d Cir. 2000) ("[v]enue is proper in any district in which defendant committed the crime"). Where an indictment charges a defendant in multiple counts, the government must prove by a preponderance of the evidence that venue is proper on each count. *See United States v. Bala*, 236 F.3d at 95 ("the government must prove venue by a preponderance of the evidence"); *United States v. Beech-Nut Nutrition Corp.*, 871 F.2d 1181, 1188 (2d Cir.) ("when a defendant is charged in more than one count, venue must be proper with respect to each count"), *cert. denied*, 493 U.S. 933 (1989).

As a general mater, venue for wire fraud offenses lies in the district or districts in which the wire "begins its course, continues or ends." *United States v. Rutigliano*, 790 F.3d 389, 397 (2d Cir. 2015); *United States v. Kim*, 246 F.3d 186, 192 (2d Cir. 2001) (affirming district court's determination that wire is "transmitted" both where it was sent and where it was received). Here, the indictment clearly alleges that the transactions involved wire transfers from bank accounts located in Rochester, New York to a bank account located in Miami, Florida. Based upon these allegations, venue is proper in the Western District of New York. *See United States v. Louissaint*, 2016 WL 3145145, *10 (W.D.N.Y. 2016) (denying motion to dismiss for improper venue where transactions charged in the indictment involved wire transmissions between Rochester, New York and Pennsylvania, Florida, and Texas).

## IV.    Request for Three-Judge Court Panel

Aldrich's submissions suggest that she seeks the empaneling of a three-judge district court pursuant to 28 U.S.C. § 2284. (Docket ## 245 at 1 ("Demand for Three-Judge Court"); 246 at ¶ 7). Pursuant to 28 U.S.C. § 2284(a):

> A district court of three judges shall be convened when otherwise required by Act of Congress, or when an action is filed challenging the constitutionality of the apportionment of congressional districts or the apportionment of any statewide legislature body.

*Id.* Aldrich "does not challenge the apportionment of congressional districts or a statewide legislative body . . . , nor does [s]he identify any Act of Congress requiring a three-judge panel to hear the issues addressed here." *Camara v. New York*, 2012 WL 3242697, *2 n.4 (S.D.N.Y. 2012); *see Yagan v. Dougherty*, 2010 WL 2594790, *6 (N.D.N.Y.) ("plaintiff has cited no reason for this court to recommend convening a three-judge panel[;] [t]here is no claim involving apportionment of constitutional districts or statewide legislative bodies[;] [a]lthough she . . . is purportedly raising constitutional issues, th[is] fact[] alone do[es] not constitute [an] adequate reason[] to convene a three-judge panel"), *report and recommendation adopted by*, 2010 WL 2594369 (N.D.N.Y. 2010). Thus, Aldrich's passing reference to this statute "does not provide the [c]ourt with any basis for granting [her] request to convene a three-judge panel on any question presented to this [c]ourt." *See Agee v. Mitchell*, 2019 WL 5956404, *2 n.2 (N.D.N.Y. 2019). Accordingly, I recommend denial of this request.

## V.    Validity of the Statutes and the Investigation

Aldrich also maintains that dismissal of the indictment is warranted because implementing regulations of the criminal statutes charged in the indictment were not published in the Federal Register or the Code of Federal Regulations. (Docket # 246 at ¶¶ 38-44). This

12

argument is meritless because "the Federal Register Act, 44 U.S.C. § 1505, . . . by its terms, does not require federal criminal statutes to be published in the Federal Register." *United States v. Casey*, 2005 WL 2114059, *3 (W.D. Tenn. 2005) (collecting cases). In somewhat conclusory contentions that are difficult to comprehend, Aldrich appears to argue that dismissal of the criminal charges against her is warranted because the government failed to submit this matter to the General Accounting Office or the Office of Management and Budget and because, in her view, the investigative jurisdiction of the Internal Revenue Service and the Bureau of Alcohol, Tobacco and Firearms is limited to the District of Columbia. (Docket ## 245 at ¶ 23; 246 at ¶¶ 22-29). Aldrich has cited no authority dismissing federal charges on these bases, and I do not find that her contentions are supported by law or present any basis justifying dismissal of the indictment. Nor do I find that any other arguments raised in Aldrich's numerous filings warrant dismissal of the charges.

## CONCLUSION

For the reasons stated above, Aldrich's motions for discovery and inspection **(Docket # 220, 221, 239)** are **GRANTED in part and DENIED in part**. Further, for the reasons stated above, I recommend that the district court deny Aldrich's motions to dismiss the indictment. **(Docket ## 239, 244, 245, 246).**

*s/Marian W. Payson*
MARIAN W. PAYSON
United States Magistrate Judge

Dated: Rochester, New York
June 3, 2021

Pursuant to 28 U.S.C. § 636(b)(1), it is hereby

**ORDERED**, that this Report and Recommendation be filed with the Clerk of the Court.

**ANY OBJECTIONS** to this Report and Recommendation must be filed with the Clerk of this Court within fourteen (14) days after receipt of a copy of this Report and Recommendation in accordance with the above statute and Rule 59(b) of the Local Rules of Criminal Procedure for the Western District of New York.[6]

The district court will ordinarily refuse to consider on *de novo* review arguments, case law and/or evidentiary material which could have been, but was not, presented to the magistrate judge in the first instance. *See*, *e.g.*, *Paterson-Leitch Co. v. Mass. Mun. Wholesale Elec. Co.*, 840 F.2d 985 (1st Cir. 1988).

**Failure to file objections within the specified time or to request an extension of such time waives the right to appeal the District Court's Order.** *Thomas v. Arn*, 474 U.S. 140 (1985); *Small v. Sec'y of Health & Human Servs.*, 892 F.2d 15 (2d Cir. 1989); *Wesolek v. Canadair Ltd.*, 838 F.2d 55 (2d Cir. 1988).

The parties are reminded that, pursuant to Rule 59(b) of the Local Rules of Criminal Procedure for the Western District of New York, "[w]ritten objections . . . shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for such objection and shall be supported by legal authority." **Failure to comply with the provisions of Rule 59(b) may result in the District Court's refusal to consider the objection.**

Let the Clerk send a copy of this Order and a copy of the Report and Recommendation to the attorneys for the parties.

**IT IS SO ORDERED.**

                                          *s/Marian W. Payson*
                                          MARIAN W. PAYSON
                                          United States Magistrate Judge

Dated: Rochester, New York
         June 3, 2021

---

[6] Counsel is advised that a new period of excludable time pursuant to 18 U.S.C. § 3161(h)(1)(D) commences with the filing of this Report and Recommendation. Such period of excludable delay lasts only until objections to this Report and Recommendation are filed or until the fourteen days allowed for filing objections has elapsed. *United States v. Andress*, 943 F.2d 622 (6th Cir. 1991); *United States v. Long*, 900 F.2d 1270 (8th Cir. 1990).